Judge Mills
delivered the Opinion of the Court.
On the 21st of April, 1821, Michael and Charles Campbell exhibited their bill, charging that Andrew Hynes, in his lifetime, sold and conveyed to litem, in 1793, a tract of 2500 acres of land, at the price of $1259; that he misrepresented the quality, and also the title thereof; that he represented the patent as having issued to William May, and conveyed to nimby said William May and Philip Philips, when, in truth and in fact, the, patent issued to George May, and that Hynes had no title either legal or equitable to the lands. They make the executor, heirs and devisees of A. Hynes defendants, and pray for a rescission of the contract and restoration of the purchase money, and fen* general relief.
The heirs, devisees and executors of Hynes answer the bill, and deny any misrepresentation of the quality of the land, or any fraud in their testator in the sale, and allege that he verily believed, that his title was complete, and they now admit that George May had improperly got the patent in his name, when the land really belonged to William .May, and the plat and certificate was returned in his name; but afterwards was altered by George May, who thus got the patent, and that this was unknown to their testator, as also to William May, who united with Philip Philips in a deed to their ancestor, and that he conveyed to the complainants, both of which deeds state the patent to be in William May,
They, in an amended answer, state, that since this matter was stirred, they have discovered that George May, the patentee, conveyed an undivided mdiety of said land to Richard Bibb, and the other moiety to general Matthew Walton, who devised the same to his widow, now Mrs. Pope, that Pope and wife, and Bibb had divided, by proper deeds of *287 partition, and the part contained in the conveyance by their ancestor to the complainants, had fallen to Bibb, and they had attained from said Bibb, a conveyance thereof, and then tender and oiler a complete title to the complainants, who resist being compelled to fake the same, and insist on the rescission of the contract.
Decree of the circuit court rescinding the contract,
Contact acquitted of fraud.
Want of the regular registration of the deeds of conveyance, by which the 1 vendor deduces title, there being no other proof of their execution, is an insuperable objection to compel ngthe purchaser to receive the conveyance.
Certificate of Justices of the Peace, of the acknowledgement of a deed for land, in other counties, must shew the deed was h no rated ged, but was sub-sm-ibed in his presence.
*287 The court below determined that the chain of title from George May, through Bibb and Walton, was not such as the complainants were bound to receive, and set aside the contract, and decreed that the heirs, executors and devisees of Hynes, should refund the consideration money with interest, which that court settled at a large sum of money. From this decree the defendants below appealed.
We are satisfied that there was no fraud in the sale from Hynes to the complainants, and no misrepresentation of quality; but there was a mistake in stating the title to be in William May, as all parties then believed it to be, when the patent had issued to George May.
Under these circumstances we have felt a disposition to compel the complainants to accept the title, which the defendants have acquired, believing such a course would he equitable, under the circumstances of the case, and have inspected the conveyances for that purpose, and find that we are bound to conclude that the complainants are not bound to accept thereof, because some of the conveyances are not acknowledged and recorded as the law requires, and therefore, their authentications do not prove that they are genuine, and a conveyance from such a chain of title, a party ought not to be compelled to accept.
The conveyances to which we allude in this particular, are the deeds from George May to Richard Bibb and Matthew Walton, the first dated the 19th of December, 1797, and the latter the 7th of September, 1799. They were acknowledged before two justices of peace of Dunwiddie county, and State of Virginia, who certify simply, that the grantor acknowledged the same before them, as the law *288 requires, without adding that he also subscribed the same in their presence. They are otherwise well certified and recorded in the proper office. In the case of Hughes vs. Wilson, and Womack, Litt. sel. ca. 292, and in M’Connell vs. Brown &c. ibid, 459. We had occasion to consider this question, and it was there held that a deed so acknowledged in a county different from that wherein the land lies, was defective, because the justices did not also certify that it was subscribed in their presence.
Former de- _ cisión that it is necessary for the jus-, tice to certify the deed was subscribe ed as well as acknowledged in his presence, discussed and approved.
Act of >96, j Dig. L. K. ing themod’e of authenticating conveyances, out of the state, and not requiring the dee-ls to be subscribed before the justices of the peace, -was repealed by the act of ’85, 1 Dig. L. K. 307.
*288 Feeling sensible that these decisions may mate-really affect and jeopardize many of the titles in the State, because that from the conveyances that come before us, acknowledged before two justices of the peace, they have seldom or never certified that the grantor also subscribed the same in their presence, we have been led to review these cases critically; willing to expound the law of conveyances, which is a confused mass of legislation, as liberally as possible, v.t res magis valeat quam per cat. Cut after the most attentive reconsideration of these cases, we are constrained to adhere to them as sound law on this point, for the following reasons: first, the act of 1792, 1 Dig. L. K. 340, is explicit in its requisitions, that the party shall “acknowledge and subscribe,” the deed “in the presence of two justices of the peace,” and that the justices shall “certify the same,” and it admits of no construction to esv cape from the dilemma, and the legislature has the undoubted control of this subject, and may declare what the law shall be even without assigning a sufficient reason therefor. But secondly, there is an obvious reason for the enactment, whjch no doubt had its influence. It was inserted to identify the, grantors, and thereby to prevent any from making such acknowledgments in the names of others, without furnishing the means of detection, and thusf grants made by persons, by fraudulent substitution, wrere intended to be guarded against.
But as the conveyances in the cases of Hughes vs. Wilson and Womack, and M’Connell vs. Brown, were both executed in this State, we have been led to examine whether foreign deeds may not escapa *289 these decision. To warrant this exception, we have turned out attention to the act of 1776, 1 Dig. L. K. 306, and find that it regulates only conveyances made out of the State, and that it provides for acknowledgment alone, before two justices of the peace, and says not a word about subscribing, and if that act is in force in this respect, it will exactly embrace the case in question. But on examining the subsequent statutes of Virginia, we are of opinion it is not in force. The act of 1785, in force after the first day of January, 1787, 1 Dig. L. K. 307, declares, “nor shall such conveyance be good against a purchaser, for a valuable consideration not having notice thereof, or any creditor, unless the same writing be acknowledged by the party or parties, who shall have sealed and delivered it, or be proved by these witnesses to be his, her or their act, before the general court, or before the court of that county, city, or corporation, in which the land conveyed or some part thereof, lieth, or in the manner hereinafter directed.” These last expressions evidently include all deeds, the manner of recording which is “thereinafter directed,” and the words evidently exclude any other mode of authentication, and in whatsoever manner deeds before that act might be acknowledged by grantors residing out of the State, thereafter all are brought to the rule prescribed by the act of 1785, and it thus virtually, but effectually, repeals the act of 1776, in all the cases in the latter act provided for, and in its subsequent provisions, it expressly directs how conveyances by grantors residing without, for lands within the State, shall be authenticated.
That act of ’85, required á commission to be issued by the olerk of the court where the deed was to be recorded, to the justices of the peace, to re* ceive the acknowledgement.
And in all the modes there (by the act of ’85,) pointed out, justices of the peace, without a commission, are wholly omitted; of course, thereafter, no acknowledgment before them would entitle a deed to record, except such justices were empowered by a commission issued by the clerk of the court where the deed was to be recorded, and in the case before us, no such commission was issued.
Thus stood the law till 1792, when our first act before noticed was passed. That, after providing *290 for the acknowledment of deeds before two justices of the peace, by grantors residing without the county where the land dies, in the next section, allows grantors also, who reside without the State, to proceed in the “some manner” as those within the State, and without the county, were allowed to do. But in this act the word “subscribe,” as well as “acknowledge” is inserted, which we have seen, we are not at liberty to expunge or disregard. The deeds in question must be brought within it to be good, and they cannot be brought within it, because the Justices have not certified that the grantor subscribed the deed as well as acknowledged it in their presence. The Legislature. have once thought and decided, that this law with the word “subscribe” in it, as requisition, was politic. It still remains for that department of the government, and not this, to decide on the policy of its continuance, when its provisions are so frequently disregarded by the justices of the peace, who attempt to act under it, It is our duty to declare what the law is, regardless of the consequences that may flow from its administration.
Act of Kentucky of >92, does not require the commission to the justi-tices, but requires the deed shall be subscribed before them, and so they must certify.
?f there were a covenant of warranty in the deed, the purchaser might be compelled to await an e-viotion, and rely on that, but there being no war-ruhty> the contract rescinded.
On the rescission of a contract for land, because of dGf( et.of ti-tule, of which the vendor-was misla-ken, and in-noce.ntJy) the moneyfwidT interest, and 110t the value “/t^misas-ure of recov-er7-
*290 As the complainants cannot, therefore, be compelled to accept the conveyances as tendered, and there was « mistake in making the contract, and that a great one, asto where the title really resided at the time, it will follow from the principles which govern courts of equity, that they are entitled to a rescission of the contract, especially as they have no warranty, but were induced to take the supposed title, and‘rely on it alone. If they had a warranty, they might be compelled to rely thereon, till an eviction happened.
The question then arises to what are they entitled? They cannot be entitled to the value of the land now, or at any subsequent period, because, as we have said, the grantor was not guilty of misrepresenting the title, knowing its true situation to be otherwise. They are, therefore, entitled to have the consideration money refunded with its interest, and nomore.
Theconsider-a'ion stated ■“ is conclusive between the parties unless fraud or mi?take in Iwíhl nf leged and \7TOV6Ci»
andTvWence offered to Prov.e thG . greater than1 that declared, in lhe veyance*
’Where the 0n^Consider-ation and divers others, without spe-oifying them; ^^¡¿era-6 ti0ns wore, may bo a-verre^and p v
Here an important question arises, as to what that sum really is? The conveyance in usual form declares the consideration to be five shillings. The complainants charge the consideration to be $1250 The defendants declare their ignorance of what the consideration really is, and rely upon the deed as fixing it. To gfet around this, the complainants do not attempt to aver or prove that there was any fraud or mistake in drafting the deed, but allege that there were sundry mutual dealings between them and the defendant’s testator, and that when they took this land from him, he, the said testator entered a charge therefor in his books, at the price of $1250, which was the real consideration, and call upon the executors to produce the books of the testator which is done, and on them, a charge is found to this effect against the complainants.
“1796, to 2500 acres of land, £15, per hundred, £375.” The account still remains open, and there stands a small balance against the complainants, still appearing due.
rtt This entry instead of the deed was taken by the court as proving what the consideration really was, and the court decreed the amount accordingly, Can this evidence control the deed, or is the deed conclusive till the evidence of equal grade is produced? The law has been long settled, since the days of Coke, that the consideration of a deed is conclusive, as well as the other parts thereof, unless it is impeached for fraud or mistake,, nor can the consideration be disproved by evidence inferior thereto.
If a conveyance expresses a consideration, and also divers other considerations, without stating what they are, it is competent to aver and prove what those considerations really are.* J
Some authorities have gone so far, when one consideration alone is stated, as to allow averment and proof of another additional consideration, Whether tliis last position is tenable, is by some decisions rendered questionable. But whether it be, or be not correct, the additional consideration *292 proved, must be one of a different character or quality, and not a simple increase of the same character added to the consideration named, such as when the conveyance said one dollar, to add thereto by inferior proof, one thousand. The consideration expressed cannot be lessened, and of course it cannot be swelled, by adding, by inferior evidence, one dollar to another.
Query, of the competency of proving an additional and different consideration.
It cannot be averred and proved the consideration recited was greater in the same kind, •without alleging fraud or mistake.
Entry in the books of the vendor, •wherein he charged the 3and at a higher sum than that recited in the deed, is inferior evidence of the consideration, and cannot prevail against the recital.
Decree for rescission of the contract for complainant, and for his Jive shillings consideration money, with interest,
Absent the Chief Justice.
Chápese, for plaintiffs; Wiclcliffe, for defendants.
Nor will this entry in the books of the testator be counted evidence of sufficient grade to control and add to the deed. The parties by the most solemn instrument which they were capable of making, fixed what the consideration really is, and it must be held conclusive, when assailed by such an entry as this, which is no more than a new memorandum which has been often held insufficient to overrule and vary a solemn instrument under seal. See Roberts on frauds, 118, 119, in note; 3 Starkie evi. 1004, 1006, and authorities there cited. Morris vs. Morris, 2 Bibb 311. This is a contest between the same parties or privy to the deed. Strangers, it is true, cannot be concluded by it. As to them it is res inter alias acta, and they may add to, vary, contradict or disprove it altogether. But we have met with no case, which tolerates parties or privies to do this, without the allegations of fraud or mistake, are made and supported for the purpose of admitting the inferior evidence.
It therefore, follows, from the way in which the complainants have prepared their case, although they are entitled to a rescission of the contract, they can only recover their simple five shillings with its interest, a recovery scarcely equal to a pound of flesh.
The decree is reversed with costs, and the cause remanded with directions to enter such decree as shall conform to the principles of this opinion.